IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CHARLES RICHARD LIVECCHI, §
§
§
Plaintiff, §
§ Civil Action No. 3:07-CV-1305-D
VS. §
§
THE CITY OF GRAND PRAIRIE, §
et al., §
§
Defendants. §

MEMORANDUM OPINION
AND ORDER

In this installment of a series of disputes between plaintiff
Charles R. Livecchi ("Livecchi") and defendant City of Grand
Prairie ("City") arising from the City's attempts to regulate
Livecchi's operation of an apartment complex, the court must decide
whether Livecchi has any viable claims against the defendants and
whether the individual defendants are entitled to judicial or
qualified immunity. Concluding that Livecchi has no viable claims
and that the individual defendants are entitled to judicial or
qualified immunity, the court enters summary judgment in
defendants' favor.

I

Livecchi brings this action under 42 U.S.C. § 1983 and Texas
law against the City and four of its employees, individually and in
their official capacities,[1] on constitutional and state-law claims

_____

[1]A suit against a government official in his official capacity
is "only another way of pleading an action against an entity of
which [the official] is an agent." *Monell v. Dep't of Soc. Servs.*

arising out of code-enforcement inspections at the Barrington, a Livecchi-owned and operated apartment complex located in Grand Prairie, Texas.[2] Over the 14 years that Livecchi has owned the Barrington, disputes have arisen with the City regarding its maintenance and operation. Prior lawsuits between the parties were settled in 1995 and 2003. Livecchi complains about the conduct of two City housing enforcement officers: Gary Walters ("Walters") and his supervisor, Esther Coleman ("Coleman"),[3] the City's housing assistance manager.

The events that precipitated the present lawsuit began in September 2005, when Walters notified Livecchi that the City intended to conduct its annual inspection of his complex. Livecchi indicated that he would not permit an inspection without a warrant.

_____

*of N.Y.*, 436 U.S. 658, 690 n.55 (1978). If the government entity receives notice and an opportunity to respond, an "official-capacity suit" is treated as a suit against the entity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). A suit against a municipal official in his official capacity is not a suit against the official personally, because the real party in interest is the entity. *Id.* Accordingly, Livecchi's claims against the individual defendants in their official capacities are treated as claims against the City. The court's entry of summary judgment in favor of the City also resolves the claims against the individual defendants in their official capacities.

[2]Although the court attempts to recount the facts and draw all reasonable inferences in favor of Livecchi as the summary judgment nonmovant, *see*, *e.g.*, *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.), its task is more difficult due to his failure to respond to defendants' motion.

[3]Livecchi sued Coleman as Esther "Colman." The court will refer to her by the correct spelling of her name.

Walters sought a warrant from defendant Stephanie Alvarado ("Judge Alvarado"),[4] a City of Grand Prairie associate municipal judge. Based on Walters' affidavit, Judge Alvarado issued an administrative search warrant that authorized the inspection. When Walters arrived at the Barrington, however, Livecchi questioned the warrant's validity and refused to facilitate the inspection. Walters issued Livecchi ten citations based on his refusal.

At a subsequent hearing of the Grand Prairie Municipal Court, defendant Nancy Robb ("Judge Robb"), another City of Grand Prairie associate municipal judge, convicted Livecchi of contempt for failing to comply with the warrant. After spending one night in jail, Livecchi purged the contempt by agreeing to permit the complex to be inspected, which occurred in October 2005. Livecchi later pleaded no contest to the citations and paid approximately $6,000 in fines.

Due to violations found during the October inspections, City housing enforcement officers conducted further inspections in December 2005 and the spring of 2006. Nine citations for building code violations were issued to Livecchi, and he was convicted following a trial in November 2006. Additionally, after further inspections in 2007, the City concluded that Livecchi's complex failed to meet federal housing quality standards imposed by Section

---

[4]Livecchi sued Judge Alvarado as Stephanie "Alvardo." The court will refer to her by the correct spelling of her name.

8, a federal program that provides housing assistance payments to apartment owners on behalf of low-income tenants. The City disqualified Livecchi from participating in Section 8.

Livecchi, appearing *pro se*, asserts six claims based on the above facts: violation of civil rights (based on alleged Fourth, Fourteenth, and Eighth Amendment violations), retaliation, violation of due process, failure to follow U.S. Department of Housing and Urban Development ("HUD") regulations, criminal trespass, and breach of settlement agreement.[5] Defendants move for summary judgment dismissing all claims. Livecchi seeks a continuance under Fed. R. Civ. P. 56(f) to respond to defendants' motion, and he has not responded to the motion.

II

The court first addresses Livecchi's motion for a continuance under Rule 56(f). Livecchi contends that he needs additional time to conduct discovery due to "continuing" and "ongoing" disputes with the City. P. Mot. ¶ 10.

---

[5]At various points in his complaint, Livecchi alleges that defendants violated § 1983. *See* Compl. ¶¶ 83, 89, and 91. There is no such thing as a violation of § 1983. "Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates," and an "underlying constitutional or statutory violation is a predicate to liability under § 1983." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citations and internal quotation marks omitted) (quoting *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989)). Section 1983 therefore provides a remedial mechanism for alleged violations of constitutional or statutory rights.

- 4 -

The continuance authorized by Rule 56(f) is a safe harbor built into the rules so that summary judgment is not granted prematurely. *Union City Barge Line, Inc. v. Union Carbide Corp.*, 823 F.2d 129, 136 (5th Cir. 1987). To comply with the Rule, the party opposing summary judgment must file the specified non-evidentiary affidavit, explaining why he cannot oppose the summary judgment motion on the merits. *Id.* The party may not rely on vague assertions that additional discovery will produce needed, but unspecified, facts. *Id.* at 137. He must demonstrate why he needs additional discovery and how the additional discovery will create a genuine issue of material fact. *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993).

Rule 56(f) permits a court to grant a continuance when the nonmovant has not had the opportunity to conduct discovery that is essential to his opposition to a motion for summary judgment. *Wright v. Blythe-Nelson*, 2001 WL 1012701, at *2 (N.D. Tex. Aug. 15, 2001) (Fitzwater, J.) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)). When a party has had an opportunity to conduct discovery but has not diligently pursued it, however, this lack of diligence cannot supply the basis for granting a continuance. *See Krim*, 989 F.2d at 1442-43; *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991) (holding that if nonmoving party has not diligently pursued discovery of

necessary evidence, court need not accommodate request for continuance). Rule 56(f) offers relief where the nonmovant has not had a full opportunity to conduct——not to complete——discovery. The two concepts are distinct. *See McCarty v. United States*, 929 F.2d 1085, 1088 (5th Cir. 1991) (per curiam) (rejecting nonmovant's contention that district court abused its discretion by failing to permit him to complete discovery before granting summary judgment, and holding that "Rule 56 does not require that discovery take place before granting summary judgment.").

B

This case was filed in the Fort Worth Division of this court on March 8, 2007 and transferred to this division on July 26, 2007. The court's September 18, 2007 scheduling order required the parties to complete discovery by September 1, 2008, over 18 months after he filed the case. On August 6, 2008 Livecchi served on the City a set of interrogatories. Defendants moved to quash the discovery as untimely. Livecchi filed a "cross-motion" that sought to extend the discovery period to January 1, 2009. Magistrate Judge Stickney granted the motion to quash and denied Livecchi's request to extend the discovery deadline. *Livecchi v. City of Grand Prairie*, No. 3:07-CV-1305-D, slip. op. at 3 (N.D. Tex. Oct. 16, 2008) (Stickney, J.), *aff'd*, (N.D. Tex. Nov. 13, 2008) (Fitzwater, C.J.). Judge Stickney held that the crux of Livecchi's argument was that he had been "in effect, too busy to compile the

interrogatories" and that this did not meet the "excusable neglect" standard required to justify the dilatory service of the interrogatories. *Id.* at 2. The court affirmed Judge Stickney's ruling. *Livecchi v. City of Grand Prairie*, No. 3:07-CV-1305-D, slip. op. at 2 (N.D. Tex. Nov. 13, 2008) (Fitzwater, C.J.). Livecchi's present Rule 56(f) motion is based on the same "busy schedule" theory.[6]

C

The court denies Livecchi's Rule 56(f) motion because he has not demonstrated that he has diligently pursued discovery in this case. Livecchi waited over 17 months after he filed suit and nearly 11 months after the court entered its scheduling order to initiate any discovery. He acknowledges that his "initial request for discovery to the City and the remaining defendants was forwarded late in the time frame set by the original scheduling order." P. Mot. ¶ 29. Although he may have been engaged in other disputes with the City during this time, his total inaction in pursuing discovery for over 17 months, and until shortly before the deadline, persuades the court that it should not grant a Rule 56(f) continuance.

Moreover, even assuming that Livecchi had demonstrated diligence, he has not properly identified specific facts that he

---

[6]For example, Livecchi refers the court to the affidavit he filed in connection with his earlier "cross-motion." *See* P. Mot. ¶ 10.

expects to discover and why they will create a genuine issue of material fact. Most of the discovery that Livecchi seeks is broad in nature or relates to legal questions that are not properly the subject of discovery. *See*, *e.g.*, P. Mot. ¶ 19(b) ("upon information and belief, Judge Alvarado did not have any jurisdiction to issue administrative search warrants for the Barrington and neither did Judge Robb and, in the absence of the requested disclosure, I [cannot] determine whether the City Charter or the state laws permit these judges to issue these search warrants); *id*. ¶ 24 (seeking discovery to "determine whether the City and the individual[ ] defendants, in their actions taken under the HUD regulations and HUD agreements, treated me in the same fashion and manner as others who were alleged to have violated the HUD regulations or breached any agreements between HUD and the City and property owners"). Livecchi has therefore failed to demonstrate why he needs additional discovery and how the additional discovery will create a genuine issue of material fact. *See Krim*, 989 F.2d at 1442.

III

The court now turns to the merits of defendants' summary judgment motion.

Livecchi's failure to respond to defendants' motion does not, of course, permit the court to enter a "default" summary judgment, but the court may accept defendants' evidence as undisputed.

*Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.). Moreover, "[a] summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp. v. Westowne Associates*, 929 F.2d 160, 165 (5th Cir. 1991)).

Judges Alvarado and Robb seek summary judgment on the basis of the affirmative defense of absolute judicial immunity, and Walters and Coleman move for summary judgment based on the affirmative defense of qualified immunity. When the defendant to a 42 U.S.C. § 1983 claim invokes immunity as an affirmative defense, the burden is on the plaintiff to establish that the defendant is not protected because the official's allegedly wrongful conduct violated clearly established law. *See Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir. 2005) (addressing qualified immunity). To prevail, the plaintiff must show "genuine issues of material fact [exist] concerning the reasonableness" of the defendant's conduct. *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001). "Although nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

> The defendant official must initially plead
> his good faith and establish that he was
> acting within the scope of his discretionary
> authority. Once the defendant has done so,
> the burden shifts to the plaintiff to rebut
> this defense by establishing that the
> official's allegedly wrongful conduct violated
> clearly established law.

*Id.* (quoting *Bazan*, 246 F.3d at 489 (internal quotation marks and citations omitted), and citing *Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997) ("We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." (internal quotation marks omitted))).

Defendants have pleaded absolute and qualified immunity (as applicable to them). Ds. Ans. ¶¶ 2.01-2.02, 3.01-3.05, and 4.01-4.05. The burden to rebut the defense has shifted to Livecchi. Because defendants will not have the burden at trial on Livecchi's claims or on their immunity affirmative defenses, they can obtain summary judgment by pointing the court to the absence of evidence to support the claims and/or defeat the defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (addressing general summary judgment standard; *Bazan*, 246 F.3d at 489 (addressing qualified immunity). If defendants do so, Livecchi must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such

that a reasonable jury could return a verdict for the nonmovant. *Anderson*, 477 U.S. at 248. Livecchi's failure to produce proof as to any essential element renders all other facts immaterial. *Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.) (citing *Edgar v. Gen. Elec. Co.*, 2002 WL 318331, at *4 (N.D. Tex. Feb. 27, 2002) (Fitzwater, J.)). Summary judgment is mandatory where the nonmoving party fails to meet this burden. *Little*, 37 F.3d at 1076.

IV

The court first considers the affirmative defense of judicial immunity.

Judges Alvarado and Robb assert the affirmative defense of absolute judicial immunity for all the claims brought against them (violation of civil rights, retaliation, and violation of due process). Judicial immunity is a "principle of the highest importance to the proper administration of justice" because it enables a judge freely "to act upon [her] own convictions, without apprehension of personal consequences to [herself]." *Stump v. Sparkman*, 435 U.S. 349, 355 (1978) (internal quotation marks omitted). It is well established that a "judge will not be deprived of immunity because the action [she] took was in error, was done maliciously, or was in excess of [her] authority; rather [she] will be subject to liability only when [she] has acted in the 'clear absence of all jurisdiction.'" *Mays v. Sudderth*, 97 F.3d

- 11 -

107, 110 (5th Cir. 1996) (quoting *Stump*, 435 U.S. at 356-57)).

The claims against Judges Alvarado and Robb relate to their issuance of administrative search warrants that authorized inspection of Livecchi's complex and Judge Robb's issuance of a contempt judgment against Livecchi. Judges Alvarado and Robb clearly were acting within their jurisdiction as judges of the municipal court when they took these actions. *See* Grand Prairie, Tex., City Charter, art. IV, § 26 (granting municipal court jurisdiction over criminal matters) (1987); Grand Prairie, Tex., Code of Ordinances, ch. 29, art. I, § 29-3 (2008) (granting municipal court jurisdiction to enforce municipal ordinances relating to building code enforcement, *inter alia*). Therefore, they are entitled to absolute judicial immunity for all the claims against them.[7]

V

The court next considers the affirmative defense of qualified immunity.

Walters and Coleman assert the affirmative defense of qualified immunity for the constitutional claims brought against them (violation of civil rights and retaliation). "Qualified immunity protects government officials performing discretionary functions from civil liability if their conduct does not violate

_____

[7]As will be discussed below, even assuming that Judges Alvarado and Robb are not entitled to judicial immunity, the claims against them fail on the merits.

clearly established statutory or constitutional rights that a reasonable person would have known." *Singleton v. St. Charles Parish Sheriff's Dep't*, ___ Fed. Appx. ___, 2009 WL 106507, at *4 (5th Cir. Jan. 16, 2009) (per curiam) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "To decide whether defendants are entitled to qualified immunity, the court must first answer the threshold question whether, taken in the light most favorable to plaintiffs as the parties asserting the injuries, the facts they have alleged show that defendants' conduct violated a constitutional right." *Ellis v. Crawford*, 2005 WL 525406, at *3 (N.D. Tex. Mar. 3, 2005) (Fitzwater, J.) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This must be the initial inquiry.")).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.[8]  "[I]f a violation could be made out on a favorable view of

---

[8]The Supreme Court recently held that *Saucier*'s two-step procedure for determining qualified immunity is not mandatory. *See Pearson v. Callahan*, ___ U.S. ___, ___ S.Ct. ___, 2009 WL 128768 (U.S. Jan. 21, 2009).  Specifically, judges are free to consider *Saucier*'s second prong without first deciding whether the facts show a constitutional violation. *Id*. at *9.  The "decision does not prevent the lower courts from following the *Saucier* procedure;

the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). "The objective reasonableness of allegedly illegal conduct is assessed in light of the legal rules clearly established at the time it was taken." *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "'The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory right." *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 457 (5th Cir. 2001)).

As will be discussed below, viewing the alleged facts in the light most favorable to Livecchi, he has failed to show that defendants' conduct violated a constitutional right. Therefore, Walter and Coleman are entitled to qualified immunity on these

---

it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id*. at *13. The court in its discretion has decided to follow *Saucier* in this case.

claims.

VI

The court now turns to the merits of Livecchi's constitutional claims.

A

Livecchi's first claim is styled "violation of civil rights" and is based on alleged violations of the Fourth, Fourteenth, and Eighth Amendments. It pertains to his September 2005 contempt judgment, the inspections conducted in October and December 2005, and the related administrative search warrants. *See* Compl. ¶ 71. The claim appears to consist of three components. First, Livecchi asserts that these inspections violated his Fourth Amendment right against unreasonable search because they were based on warrants issued without probable cause. This part of the claim is directed at Walters, Coleman, and Judge Alvarado. Second, Livecchi avers that Judge Robb violated Livecchi's Fourteenth Amendment right of due process by issuing a contempt judgment against him without legal or factual basis. Third, he alleges that the City violated his Eighth Amendment right against cruel and unusual punishment by requiring him to sleep on a mat on the floor during the night he spent in jail. The court will consider each part of this claim in turn.

First, a reasonable jury could not find that Livecchi's Fourth Amendment right against unreasonable search was violated in connection with the October and December 2005 inspections. Livecchi contends that the warrants that authorized these inspections were invalid because they lacked specific identification of suspected violations or other particularized information. The general rule under the Fourth Amendment is that searches of private property are unreasonable unless they are conducted pursuant to a warrant issued upon probable cause or fall within one of the limited exceptions to the warrant requirement. *See*, *e.g.*, *Stoner v. State of Cal.*, 376 U.S. 483, 486 (1964). In most instances, probable cause is based on sworn facts that describe particularly the area to be searched and the suspected evidence to be found. *See*, *e.g.*, *United States v. Perez*, 484 F.3d 735, 741 (5th Cir. 2007) (citing U.S. Const. amend. IV). A different standard for probable cause has been developed, however, in the context of area code-enforcement housing inspections. In *Camara v. Municipal Court of the City and County of San Francisco*, 387 U.S. 523 (1967), the Supreme Court discussed the government interest in preventing "even the unintentional development of conditions which are hazardous to public health and safety." *Id*. at 535. It concluded that area code-enforcement inspections were reasonable and the only effective way to achieve this interest.

*Id.* at 535-36.  Therefore, it held:

> [I]t is obvious that "probable cause" to issue
> a warrant to inspect must exist if reasonable
> legislative or administrative standards for
> conducting area inspection are satisfied with
> respect to a particular dwelling.  Such
> standards, which will vary with the municipal
> program being enforced, may be based upon the
> passage of time, the nature of the building
> (e.g., a multifamily apartment house), or the
> condition of the entire area, but they will
> not necessarily depend upon specific knowledge
> of the condition of the particular dwelling.

*Id.* at 538.

Grand Prairie has promulgated ordinances that establish standards for residential buildings and provide for annual inspection of apartment buildings in order to ensure compliance. *See* Grand Prairie, Tex., Code of Ordinances, ch. 29, art. II, §§ 29-4 to 29-27 (2008).  It requires that advance notice of the inspection be given to each tenant.  *Id.* § 29-21(d).  Reinspections may be conducted if substandard conditions are found.  *Id.* § 29-21(a).  Further, City housing enforcement officers are authorized to order that substandard buildings be repaired, vacated, or demolished.  *Id.* § 29-19(a).  In such a case, the owner has the right of appeal to the Building Advisory and Appeals Board.  *Id.* According to defendants' evidence, it is standard City policy and practice to conduct the inspections with the cooperation and consent of the apartment owner or manager.  If this is not possible, an administrative search warrant must be obtained.  If upon presentation of the warrant the apartment owner or manager

still refuses to permit the inspection, City housing enforcement officers must not forcibly execute the warrant but instead must issue a citation and bring the matter before the municipal court. *Id*. at 272-73. This is a reasonable code-enforcement scheme. Livecchi has offered no evidence to suggest that its requirements were not followed with respect to the October and December 2005 inspections of the Barrington. Rather, a reasonable jury could only find that the City provided Livecchi advance notice of these inspections and obtained warrants to conduct them. Therefore, defendants are entitled to summary judgment dismissing the Fourth Amendment component of Livecchi's first claim.

2

Second, even assuming that Judge Robb is not entitled to judicial immunity——a dubious assumption at best——her issuance of a contempt judgment against Livecchi did not violate his Fourteenth Amendment right of due process. The evidence shows that the judgment was based on a September 28, 2005 municipal court hearing at which Livecchi was afforded an opportunity to show cause why he should not be held in contempt. A show cause notice was issued setting forth the date, time, and place of the hearing. Livecchi signed a "Contempt of Court-Defendant's Plea Form" that indicated that he had been informed of the accusation against him and the right to a hearing. Ds. App. 105. At the hearing, Livecchi cross-examined Walters, a witness for the City, and declined Judge Robb's

invitation to cross-examine Coleman, the City's second witness. He also testified on his own behalf. Because Livecchi was given notice and an opportunity to be heard before the contempt judgment was issued against him, a reasonable jury could not find that his Fourteenth Amendment right of due process was violated. *See Freeman v. City of Dallas*, 186 F.3d 601, 606-08 (5th Cir. 1999) (holding that due process rights of apartment owners were not violated by defendant city's seizure and destruction of their properties because they had sufficient prior notice and opportunity to be heard). Therefore, defendants are entitled to summary judgment on the Fourteenth Amendment component of Livecchi's first claim.

3

Third, Eighth Amendment component of Livecchi's first claim also fails.[9] Being required to sleep for one night on a mat on the floor does not amount to an "objectively sufficiently serious deprivation," which is the first element that must be met to establish that a condition of confinement constitutes cruel and unusual punishment. *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008) (internal quotation marks omitted). Livecchi does not allege or offer evidence that he suffered any harm due to this condition. *Cf. Barclay v. New York*, 477 F.Supp.2d 546, 554

---

[9]The court assumes for purposes of this analysis that he was held in criminal contempt.

- 19 -

(N.D.N.Y. 2007) (holding that requirement that prisoner double bunk did not violate Eighth Amendment where it did not cause harm to any other aspect of prison life). "It is well settled that 'the Constitution does not mandate comfortable prisons,' and that prison conditions may be 'restrictive and even harsh' without running afoul of the Eighth Amendment." *Hernandez*, 522 F.3d at 560 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981)). Moreover, Livecchi has not alleged, much less shown, that jail officials acted with deliberate indifference to his health or safety by requiring him to sleep on a mat. This element——the second that must be established——follows from the principle that the "Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual punishments." *Farmer v. Brennan*, 511 U.S. 825, 837 (1970). Therefore, defendants are entitled to summary judgment on the Eighth Amendment component of Livecchi's first claim.[10]

B

The court next addresses Livecchi's First Amendment retaliation claim. "There are four elements to a cognizable First Amendment claim: (1) an adverse decision; (2) speech that involves

---

[10]Furthermore, to the extent that Livecchi seeks in his first claim to recover damages under § 1983 on the ground that his contempt conviction and subsequent confinement were unlawful, he is barred because his conviction was never appealed or invalidated. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *Barnes v. City of Universal City*, 51 Fed. Appx. 482, 482 (5th Cir. 2002) (per curiam).

a matter of public concern; (3) a plaintiff's interest in commenting on matters of public concern must outweigh the defendant's interest in promoting efficiency; and (4) the speech must have motivated the defendant's action." *Hampton Co. Nat'l Sur., LLC v. Tunica County, Miss.*, 543 F.3d 221, 229 (5th Cir. 2008). Livecchi avers that the "City and the individual defendants have maintained a pattern of unjustified, unlawful and unconstitutional inspections" of his property in retaliation for his alleged public statements that disputed the City's authority to inspect his complex without a warrant based on particularized probable cause. Compl. ¶ 60. This claim fails because Livecchi has not satisfied at least the fourth element.

Walters and Coleman have both submitted affidavits swearing that they did not take any action to retaliate against Livecchi and that they would have treated him in the same way "regardless of whether he had made an issue out of requiring us to obtain warrants to inspect his property." Ds. App. 280, 291. Further, a reasonable jury could only find that inspections of the Barrington were conducted for legitimate rather than retaliatory reasons. *See id.* at 93-94 (notice of annual inspection scheduled for September 2005), 112-14 (notice of reinspection scheduled for October 2005 based on discovered violations), 123-49 (report of violations found during October 2005 inspections and notice of reinspection scheduled for December 2005), 188 (notice of reinspection scheduled

for May 2006 based on discovered violations), 218-19 (notice of annual inspection scheduled for December 2006), 225-42 (report of violations found during December 2006 inspections and notice of reinspection scheduled for February 2007), 250-56 (notice of inspections to ensure that complex complied with federal housing quality standards and report of discovered violations). No evidence in the summary judgment record would permit a reasonable jury to find any retaliatory motive. Therefore, defendants are entitled to summary judgment on Livecchi's First Amendment retaliation claim.

C

Livecchi's third claim alleges that the City violated his Fourteenth Amendment right of due process by failing to permit him to appeal "the determinations made by the municipal court regarding the administrative warrants and inspections." Compl. ¶ 91. Livecchi does not specify how the City prevented him from appealing. The Grand Prairie Municipal Court is a municipal court of record under the Texas Government Code. *See* Tex. Gov. Code §§ 30.00421-428 (Vernon 2002). To perfect an appeal, an appellant must file a motion for new trial not later than ten days after the date that the judgment against him is rendered. A notice of appeal must be made either orally in open court during a hearing on the motion for a new trial or, if there is no hearing, by a written filing made not later than ten days after the motion for a new

trial is overruled.  *Id*. § 30.00014(c), (d).

The evidence does not support Livecchi's claim that the City somehow violated his appeal rights but rather would only permit a reasonable jury to find that he did not avail himself of them. There are three instances in which Livecchi had the right to appeal an adverse judgment of the municipal court.  First, Livecchi was convicted of contempt in September 2005 after a hearing before Judge Robb.  He did not move for a new trial or file a notice of appeal in connection with this judgment, and he purged his contempt the next day by agreeing to permit the inspection.  Ds. App. 266 (Judge Robb affidavit).  Second, Livecchi was convicted based on a plea of no contest to the ten September 2005 citations for failure to permit inspection.  He paid approximately $6,000 in fines and did not move for a new trial or file a notice of appeal in connection with these judgments.  *Id*. at 266-67.  In June 2006—after the statutory deadline for filing an appeal had passed—he sent a letter to Judge Robb requesting that the court refund his fines paid or allow him "to use this [letter] as notice to appeal your decision to a higher court."  *Id*. at 199 (Livecchi June 5, 2006 letter).  Third, in November 2006 Livecchi was tried and convicted of nine building code violations.  He timely filed a motion for a new trial.  *Id*. at 213-14 (Livecchi November 17, 2006 motion for new trial).  It was overruled by a written order the next day.  *Id*. at 215 (order overruling Livecchi motion for new

trial).  Livecchi did not file a notice of appeal.  *Id*. at 268

(Judge Robb affidavit).  Therefore, in the three instances in which

Livecchi had the right to appeal a judgment of the municipal court,

he never properly exercised it.  Accordingly, defendants are

entitled to summary judgment dismissing Livecchi's Fourteenth

Amendment due process claim.[11]

## VII

The court next considers the merits of Livecchi's other

claims.

## A

Livecchi's fourth claim alleges that the City violated HUD

rules and regulations and that this "was malicious and intended to

cause harm to Livecchi and was without any justification."  Compl.

¶ 95.  Livecchi points to no specific HUD rule or regulation, but

the conduct that he identifies is the City's determination to

terminate his participation in the federal Section 8 program.

An owner's participation in the Section 8 program is

facilitated by the Housing Assistance Payments Contract ("HAP

contract"), a standard contract developed by HUD that establishes

the monthly housing assistance payment that the owner is entitled

to receive on behalf of a low-income tenant.  The HAP contract

---

[11]Because the court holds that Livecchi cannot establish his
constitutional claims, it need not address the City's argument that
it cannot be held vicariously liable for the constitutional torts
of its employees.  *See Monell*, 436 U.S. at 692.

requires that the owner maintain the apartment unit in accordance with federal housing quality standards.  It also provides that a public housing agency ("PHA") that administers the Section 8 program must notify the owner if it determines the owner has breached the contract.  If the owner breaches, the PHA may exercise any available remedies, including, *inter alia*, termination of the HAP contract.  Further, "[t]he PHA shall not make any housing assistance payments if the contract unit does not meet the [housing quality standards], unless the owner corrects the defect within the period specified by the PHA and the PHA verifies the correction." Ds. App. 48 (HAP contract pt. B, § 3(d)).

Grand Prairie's Department of Housing and Neighborhood Services, the PHA that administers Section 8 in Grand Prairie, determined that Livecchi had not maintained certain exterior portions of the Barrington in compliance with federal housing quality standards, and it provided Livecchi notice of the specific violations, e.g., missing or inoperable patio and entry lights, ruts, and potholes in driveways.  These were not cured within the specified time frame.  Therefore, the City acted consistently with its obligations under the HUD-developed HAP contracts when it terminated Livecchi's existing contracts and disqualified him from participating in the Section 8 program.  Accordingly, defendants are entitled to summary judgment on this claim.

Livecchi's fifth claim alleges that City housing enforcement officers committed criminal trespass by entering his property without valid or enforceable warrants or other probable cause. "Trespass to real property occurs when a person enters another's land without consent. No trespass occurs when the entry is authorized as a matter of law." *Williams v. City of Dallas*, 53 S.W.3d 780, 788 (Tex. App. 2001, no pet. h.) (citation omitted); *accord Americo Energy Res., L.L.C. v. Moore*, 2008 WL 3984169, at *5 (Tex. App. 2008, no pet. h.).

As discussed above, an administrative search warrant that authorizes inspection for the purpose of building code enforcement need not be based on particularized probable cause. The warrants that authorized inspections of Livecchi's property were based on affidavits sworn by Walters, in which he recited the relevant Grand Prairie ordinance and explained the need either for a regular annual inspection or a reinspection based on earlier violations found. Therefore, because defendants have established that their entry onto Livecchi's property was authorized by law, they are entitled to summary judgment on this claim.

Further, even if Livecchi could establish the elements of trespass, he could not pursue the claim against these defendants. Although Livecchi styles this claim as a criminal violation, he is effectively pursuing an intentional tort theory against a

governmental unit and its employees. Therefore, this claim implicates the Texas Tort Claims Act. The Act contains a limited waiver of governmental immunity and "is the only . . . avenue for common-law recovery against the government." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008); *see also Harris County v. Cypress Forest Pub. Util. Dist. of Harris County*, 50 S.W.3d 551, 553 (Tex. App. 2001, no pet. h.) ("In Texas, a governmental unit is immune from tort liability unless the Legislature has waived immunity. The Act provides for a limited waiver of governmental immunity under specified circumstances." (citations omitted)); Tex. Civ. Prac. & Rem. Code §§ 101.001-101.109 (Vernon 2002 & Supp. 2008). The waiver of immunity does not apply to a claim that arises out of "assault, battery, false imprisonment, or any other intentional tort." Tex. Civ. Prac. & Rem. Code § 101.057(2). Because the trespass alleged here is an intentional tort, the City has not waived its governmental immunity with respect to this claim. *See Harris County*, 50 S.W.3d at 553-54 (holding that petition stated cause of action for intentional trespass and thus could not be pursued against governmental unit). Therefore, Livecchi cannot pursue his trespass claim against the City.

Nor may Livecchi pursue this claim against Walters and Coleman. The Act contains an "election of remedies" provision that is designed to require "a plaintiff to make an irrevocable election

at the time suit is filed between suing the governmental unit under the [Act] or proceeding against the employee alone." *Garcia*, 253 S.W.3d at 657 (citing Tex. Civ. Prac. & Rem. Code § 101.106). This "narrows the issues for trial and reduces delay and duplicative litigation costs." *Id*; *see also Jackson v. Dallas Indep. Sch. Dist.*, 1999 WL 58846, at *5 (N.D. Tex. Feb. 1, 1999) (Fitzwater, J.) ("Although recognized as a harsh grant of immunity, [§ 101.106] serves the purpose of protecting government employees from individual liability for acts or omissions where a claim based upon the same facts is made against their employers." (internal quotation marks omitted), *aff'd*, 232 F.3d 210 (5th Cir. Aug. 23, 2000) (table) (per curiam)). Therefore, "[i]f a suit is filed [under the Act] against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." Tex. Civ. Prac. & Rem. Code § 101.106(e). Here, in the brief accompanying defendants' joint motion for summary judgment, the City asks the court to dismiss the claims against Walters and Coleman. Accordingly, Livecchi cannot pursue his trespass claim against Walters and Coleman. *See DeLeon v. City of Dallas*, 2008 WL 2941245, at *5-*6 (N.D. Tex. July 25, 2008) (Kinkeade, J.) (holding that plaintiff could not pursue claim against governmental unit employee because governmental unit was entitled to judgment in its

favor based on governmental immunity).[12]

C

Livecchi's sixth claim alleges that the City breached a settlement agreement with him pertaining to a prior lawsuit. The claim does not identify the terms of the settlement agreement or how the City breached them. The factual section of Livecchi's complaint identifies a settlement made between the parties in 1995. *See* Compl. ¶ 14; Ds. App. 29-39 (1995 settlement agreement). According to defendants' evidence, the 1995 settlement agreement obligated the City to inspect no more than 10% of non-vacant units at Livecchi's apartment complex without making prior arrangements with him. *See* Ds. App. 32 (1995 settlement agreement pt. II, ¶ i). In 2003, however, Livecchi and the City entered into another settlement agreement that "abrogated" the 1995 agreement and made it of "no force or effect." *See id*. at 24 (2003 settlement agreement ¶ 2). The 2003 settlement agreement contains no restrictions or limitations on the City's ability to inspect the Barrington. Livecchi has adduced no evidence that shows that the City breached any term of the 2003 settlement agreement. Therefore, the City is entitled to summary judgment dismissing this claim.

_____

[12]Although Judge Kinkeade relied on an earlier version of § 101.106, "the Legislature made it even stricter with the 2003 amendments" that are applicable to this case. *Coronado v. Milam*, 2004 WL 1195879, at *2 (Tex. App. June, 2, 2004, pet. denied) (unpublished opinion).

*    *    *

     Accordingly, for the reasons explained, the court denies
Livecchi's November 17, 2008 Rule 56(f) motion and grants
defendants' October 1, 2008 summary judgment motion.  This suit is
dismissed with prejudice by judgment filed today.

     **SO ORDERED.**

     February 9, 2009.



                                _____
                                SIDNEY A. FITZWATER
                                CHIEF JUDGE